UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| P.R. by next friend SANDRA RAWL, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>METROPOLITAN SCHOOL DISTRICT )<br>OF WASHINGTON TOWNSHIP, )<br>)<br>Defendant. )<br>) | Cause No. 1:08-cv-1562-WTL-DML |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

Before the Court is the Defendant's Motion for Summary Judgment (Docket No. 66). This motion is fully briefed, and the Court, being duly advised, now **GRANTS** the Defendant's motion for the reasons set forth below.

**I. SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007);

*see also* FED. R. CIV. P. 56(e)(2). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Methodist Med. Ctr. of Ill. v. Am. Med. Sec., Inc.*, 38 F.3d 316, 319 (7th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The non-moving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Wolf v. Northwestern Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001), *cert. denied*, 534 U.S. 1028 (2001). "[T]he court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

In evaluating a motion for summary judgment, although the court draws all reasonable inferences from undisputed facts in favor of the nonmoving party and views the disputed evidence in the light most favorable to the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute; "instead, the nonmoving party must present definitely, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). "If the nonmoving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law because 'a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial.'" *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986)).

## **II. BACKGROUND**[1]

P.R. was born on August 11, 1994. For the time period relevant to this litigation P.R. resided in Washington Township and attended Washington Township public schools.[2] In the fall of 2006, P.R. began sixth grade at Westlane Middle School ("Westlane"). P.R. took honors classes and participated in extracurricular activities including softball, soccer, cheerleading, and show choir. In addition, P.R. participated in beauty pageants. In the fall of 2007, P.R. began seventh grade at Westlane, where she remained active and participated in track and softball. P.R. was fourteen in August 2008 when she began eighth grade at Westlane. As an eighth grader, P.R. participated in typical teenage activities and attended pool parties, birthday parties, and dances. P.R. was never a discipline problem while at Westlane and by all accounts she was a good, academically engaged, student.

Although P.R. has been HIV+ for most or all of her life,[3] she was unaware of her medical

---

[1] In her response, the Plaintiff moved to strike various portions of the Defendant's statement of material facts. P.R. alleged that: (1) the Defendant did not properly cite five assertions, *see* Docket No. 75 at 2-3; (2) the Defendant improperly included arguments by way of phrases such as "unfortunately however," "but yet," and "even though," in its statement of facts, *see id*. at 3; and (3) the Defendant offered seven pieces of inadmissible evidence, *see id.* at 4. Although the Court declines to formally strike any portion of the Defendant's brief, the Court assures the parties that in resolving the Motion for Summary Judgment, it has only relied on undisputed facts, and to the extent that any facts are in dispute, the Court has construed them in the light most favorable to the Plaintiff.

[2] After the events giving rise to this litigation occurred, P.R. withdrew from the Washington Township public school system and was home schooled for the remainder of the year. In the fall of 2009, P.R. began her freshman year at Herron High School, a public charter school in downtown Indianapolis.

[3] The facts on this point are not entirely clear. The Defendant merely notes that P.R.'s father contracted HIV though a tainted blood transfusion in 1981 and that Ms. Rawls is also HIV+.

status until fifth grade. Nevertheless, since age three, P.R. has been treated by Dr. Elaine Cox, a pediatric infectious disease specialist at Riley Hospital for Children. During the winter of 2007, Dr. Cox treated P.R. first for an ear infection and later for severe sinus infections. In January 2008, P.R. was hospitalized after having an adverse reaction to her medications. In addition, beginning in the winter of 2007 and continuing until the fall of 2008, P.R. experienced periodic catatonia, shaking of her arm, diarrhea, and pseudoseizures. These symptoms may have been stress-related. P.R. occasionally discussed her activities, feelings, and stressors over the Internet through the MySpace and Facebook websites. P.R. also used the instant messaging service AIM to communicate with others. P.R. discussed her HIV+ status on these fora, which unfortunately resulted in several rude comments.

P.R. also endured teasing and name calling at school. The first such incident occurred in April 2007, when P.R. was in the sixth grade. Prior to April 2007, P.R. and Z.A. were such close friends that P.R. disclosed her HIV+ status to Z.A. P.R. believed that Z.A. ultimately told other students that P.R. was HIV+. In response, P.R. told students that Z.A.'s mother was mentally ill.[4] Then, in May 2007, P.R. entered into an instant message exchange with Z.A.'s older sister, M.A. M.A. stated that P.R. had AIDS and questioned her about the disclosure of M.A.'s mother's mental illness. P.R. told Westlane counselor Becky Hall about the instant messages. Ms. Hall in turn told Assistant Principal Angela West. Principal Linda Lawrence was also aware of the situation. Assistant Principal West convened a meeting, which was attended by Assistant Principal West, P.R.'s mother Sandy Rawl ("Ms. Rawl"), Ms. Hall, another Westlane counselor named Lisa Johnson, Z.A., M.A., and Z.A. and M.A.'s father. Z.A. and M.A. were given a

---

[4] This was a true statement, as Z.A.'s mother suffers from schizophrenia.

4

warning by the Westlane staff and Z.A. was reminded about "how serious it was to breach the confidence of a friend." Docket No. 67 at 13. Z.A. and M.A.'s father was also encouraged to "take care of [the situation] at home." Docket No. 75 at 7.

Although P.R. finished her sixth grade year without any other problems, a second incident occurred in the fall of 2007, when P.R. was in seventh grade. Apparently, C.C., one of P.R.'s distant relatives and an eighth grader at Westlane, told another Westlane student, S.Z., that he should not kiss P.R. because he would get AIDS. It is not clear when C.C.'s comment was made or whether P.R. overheard his remark.[5] Westlane counselor Hall learned of C.C.'s statement when S.Z. reported it to her. After S.Z. reported the comment, Ms. Hall informed Principal Lawrence and called Ms. Rawl and C.C.'s mother. Ms. Hall then called C.C. to her office, discussed the inappropriateness of his comment, and followed up with him later in the school year.

A third incident occurred in the fall of 2008 when P.R. was in the eighth grade. P.R. played soccer on the Westlane team. At practice on September 9, another member of the soccer team told Coach Andrea Dennis that P.R. had AIDS.[6] Coach Dennis thought that the other player was attempting to start a rumor about P.R. so she consulted the emergency contact binder to determine if P.R.'s medical information stated that P.R. was actually HIV+. No such information was listed. On September 11, while the soccer team was on a bus heading to a

---

[5] The Defendant implies that C.C.'s comment occurred at a Halloween party that P.R. threw at her house. However, in her response, P.R. claims that C.C. "yelled across the lunchroom" at S.Z. and "he told SZ that if he kissed PR, he'd get AIDS." Docket No. 75 at 10. This discrepancy is of little import and does nothing to preclude summary judgment in this case.

[6] P.R. was not present at soccer practice when the comment was made and she did not overhear the interaction between her teammate and Coach Dennis.

5

game, Coach Dennis asked P.R. if she had AIDS. P.R. said "no" but did not explain that she was HIV+. On Monday, September 15, Ms. Rawl, who was understandably upset about the incident on the bus, went to Westlane to talk to Coach Dennis. Through that conversation, Coach Dennis learned that P.R. was in fact HIV+. In the next few days, Coach Dennis apologized to P.R. and was verbally reprimanded by Principal Lawrence. Principal Lawrence also talked to Coach Dennis about how she could have better handled the situation. In addition, on September 22, 2008, a meeting was convened between Principal Lawrence, School District Director Shelia Ewing, Westlane Athletic Director Ken Cox, P.R.'s physician Dr. Elaine Cox, and Ms. Rawl. At the meeting, Dr. Cox "discussed the need for sensitivity of [sic] children with HIV," Docket No. 67 at 18, and Principal Lawrence agreed to prepare a plan to deal with sensitivity and HIV education. Following the September 22 meeting, Principal Lawrence took various actions related to P.R. and the bus incident. She had another meeting with Coach Dennis, held a Westlane staff meeting to discuss "sensitivity with respect to what is said to children," *id.*, spoke with Ms. Rawl about helping P.R. become an HIV spokesperson, arranged for P.R. to finish her ISTEP test, helped P.R. research online classes, and drafted an outline for a sensitivity plan. Although Principal Lawrence had agreed to send a copy of the proposed plan to Dr. Cox, she never did so because on September 23, 2008, P.R. withdrew from Westlane.

According to P.R., in addition to the three incidents described above, she endured other harassment at Westlane. She claims that she received offensive instant messages about her appearance (e.g., "you're too ugly to be a model," Docket No. 75 at 10) and she was also called "the 'B' word," "a slut," and "PAIDS." *Id*. In addition, P.R. received a note, which she believed was from Z.A., "with 'YOU BITCH' and 'YOU HOE' written on it." *Id*. P.R. "also found a

6

note on her locker with 'NO AIDS AT WESTLANE' written on it." *Id*. P.R. threw these notes away. Although Principal Lawrence knew that a note had been found on P.R.'s locker, she was unaware of its content. However, this note was discussed at the September 22, 2008 meeting. Finally, Ms. Rawl reported that "[o]n a school-sponsored trip to Disney World," a phone call was made to her room "in which the caller 'asked her if it was true if her daughter had AIDS.'" *Id*. at 11.

Ms. Rawl filed this lawsuit on P.R.'s behalf alleging that the Metropolitan School District of Washington Township,[7] violated Title II of the Americans with Disabilities Act (the "ADA") and § 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act") by failing to adequately respond to alleged instances of disability discrimination that occurred after P.R.'s HIV+ status was revealed.

### III. DISCUSSION[8]

Title II of the ADA states: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, § 504 of the Rehabilitation Act states: "No otherwise qualified individual with a disability in the Untied States . . . shall, solely by reason of her or his disability,

---

[7] The Metropolitan School District of Washington Township (the "School District") is a school corporation as defined by Indiana Code 20-18-2-16. The School District is a recipient of federal funds.

[8] Before turning to the substance of the Motion for Summary Judgment, the Court notes that the Plaintiff filed a surreply brief, which the Defendant moved to strike. The Court now **DENIES** the Defendant's Motion to Strike (Docket No. 85). In ruling on the Defendant's Motion for Summary Judgment the Court has considered all of the parties' admissible evidence.

be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program . . . receiving Federal financial assistance." 29 U.S.C. § 794(a). The Rehabilitation Act incorporated the prohibitions contained within the ADA. Accordingly, when evaluating claims under the Rehabilitation Act, courts look to cases brought under the ADA. *Bellino v. Peters*, 530 F.3d 543, 548 (7th Cir. 2008). In other words, because "Congress made clear its intention that identical standards were to be applied to both Acts . . . the substantive standards for determining liability are the same." *McDonald v. Pa. Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 94-95 (3d Cir. 1995); *see Thompson v. Williamson Cnty.*, 219 F.3d 555, 557 (6th Cir. 2000); *Sutton v. Lader*, 185 F.3d 1203, 1207-08 (11th Cir. 1999); *Stone v. City of Mount Vernon*, 118 F.3d 92, 96-97 (2d Cir. 1997); *Andrews v. Ohio*, 104 F.3d 803, 807 (6th Cir. 1997); *Myers v. Hose*, 50 F.3d 278, 281 (4th Cir. 1995); *see also Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). Thus, the Court will evaluate P.R.'s ADA claim and her Rehabilitation Act claim together.

> As a general rule,
>
> a plaintiff seeking to state a claim under either the ADA or § 504 against a school receiving federal financial assistance must show that he or she is (1) disabled under the statute, (2) 'otherwise qualified' for participation in the program, and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under the program by reason of his or her disability.

*S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008); *see Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 119 (7th Cir. 1997) (stating that a prima facie case of disability discrimination has four elements: (1) the plaintiff is a handicapped individual under the Act; (2) the plaintiff is otherwise qualified for the benefit sought; (3) the plaintiff was discriminated against solely by reason of his or her handicap; and (4) the program or activity in question receives federal

financial assistance). Despite the existence of this "general" standard, following the Supreme Court's decision in *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629 (1999), several federal courts have adopted a slightly different analysis. *See S.S.*, 532 F.3d at 445; *Werth v. Bd. of Dirs.*, 472 F. Supp. 2d 1113 (E.D. Wis. 2007); *K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist.*, 381 F. Supp. 2d 343, 357 (S.D.N.Y. 2005); *Biggs v. Bd. of Educ.*, 229 F. Supp.2d 437 (D. Md. 2002). *But see M.P. ex rel. K v. Indep. Sch. Dist. No. 721*, 326 F.3d 975 (8th Cir. 2003) (applying a traditional ADA or § 504 test). Although these decisions are merely persuasive authority, in light of the *Davis* decision, the Court believes that the analysis used in *Werth*, *K.M.*, *Biggs*, and *S.S.* is appropriate in this instance.

The *Davis* decision addressed "whether a private damages action may lie against the school board in cases of student-on-student harassment" in violation of Title IX. 526 U.S. at 633. The Court quoted Title IX, which provides that "'[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance,'" *id.* at 638 (quoting 20 U.S.C. § 1681(a)), and concluded "that funding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id.* at 650. Thus, "a plaintiff must establish sexual harassment . . . that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities." *Id*. at 651. Whether conduct "rises to the level of

9

actionable 'harassment' thus 'depends on a constellation of surrounding circumstances, expectations, and relationships,' including, but not limited to, the ages of the harasser and the victim and the number of individuals involved." *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)). "Damages are not available for simple acts of teasing and name-calling among school children . . . even where these comments target differences in gender." *Id.* at 652. "Rather . . . damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." *Id.*

Critical to this Court's decision to analogize *Davis* is the similarity between the Title IX language quoted in *Davis* and the language in Title II of the ADA and § 504 of the Rehabilitation Act. *Compare* 28 U.S.C. § 1681(a) *with* 42 U.S.C. § 12132 *and* 29 U.S.C. § 794(a). From the *Davis* deliberate indifference standard, federal courts have distilled a five-part test that a plaintiff must satisfy in order to impose liability on a school district for disability-based student-on-student harassment: (1) the plaintiff must be an individual with a disability; (2) the plaintiff must have been harassed based on his or her disability; (3) the harassment must have been sufficiently severe or pervasive that it altered the condition of the plaintiff's education and created an abusive educational environment; (4) the defendant must have known about the harassment; and (5) the defendant must have been deliberately indifferent to the harassment. *S.S.*, 532 F.3d at 454; *Werth*, 472 F. Supp. 2d at 1127.

### A. P.R. is an individual with a disability.

The ADA defines disability "with respect to an individual" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a

10

record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The Rehabilitation Act uses the same definition. 29 U.S.C. § 705(9).

In *Bragdon v. Abbott*, 524 U.S. 624, 641 (1998), the United States Supreme Court after conducting a three-step analysis, concluded that "HIV infection is a physical impairment which substantially limits a major life activity, as the ADA defines it." In reaching this conclusion, the Court considered:

> First . . . whether . . . HIV infection was a physical impairment. Second, we identify the life activity upon which respondent relies (reproduction and childbearing) and determine whether it constitutes a major life activity under the ADA. Third, tying the two statutory phrases together, we ask whether the impairment substantially limited the major life activity.

*Id*. at 631. Post-*Bragdon*, most litigants have conceded that HIV and AIDS are "disabling condition[s] within the meaning of the Americans with Disabilities Act." *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 558 (7th Cir. 1999). However, in the instant case, the Defendant argues that P.R. is not disabled because she was able to compensate for any impairment caused by her HIV+ status. Docket No. 67 at 28. The Defendant emphasizes that "P.R. was a successful, popular, honors level student while attending Westlane Middle School" so "HIV did not prevent P.R. from being a good student or from participating in class." *Id*. The Defendant concludes that because "comparatively [P.R.] was doing more than the average student . . . [she] is not disabled under Title II of the ADA and § 504 and her claim fails from the outset." *Id*. at 28-29. The Defendant correctly emphasizes that the disability determination must be conducted in a case-by-case manner, *see Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002); *EEOC v. Lee's Log Cabin, Inc.*, 546 F.3d 438, 442 (7th Cir. 2008), and argues that because P.R. has HIV, not AIDS, and because the record is devoid of evidence that "P.R.'s status

substantially limits one or more major life activities," Docket No. 82 at 3, P.R.'s HIV infection is not a disability. In response, the Plaintiff merely cites *Bragdon* and notes that no court has ruled that HIV infection is not a handicap under either the Rehabilitation Act or the ADA. *See* Docket No. 75 at 18-19. Notably absent from the Plaintiff's response is any evidence regarding what major life activity is impaired by P.R.'s HIV infection or how that activity is substantially limited. However, given the voluminous case law deeming HIV infection a physical impairment that substantially limits the major life activity of reproduction, the Court shall assume, for purposes of this motion only, that the Plaintiff has satisfied this element.

      **B.**    **P.R. was harassed based on her disability.**

The Defendant, in reliance on its conclusion that P.R. is not disabled, offers no argument as to whether P.R. was harassed based on her disability. *See* Docket No. 67 at 29 n.10. Nor does the Plaintiff offer any argument on this issue. However, because the three instances of harassment that the Defendant identifies all involve P.R.'s HIV+ status, for purposes of this motion only, the Court will assume that P.R. was in fact harassed based on her disability.

      **C.**    **The harassment was sufficiently severe or pervasive that it altered the condition of P.R.'s education and created an abusive educational environment.**

According to the Defendant, any harassment that P.R. faced was neither severe nor pervasive. The Defendant emphasizes that all three incidents were separated by time (the first occurred in the spring of 2007, the second occurred in the fall of 2007 during a different school year, and the final incident occurred in the fall of 2008). The Defendant asserts that these incidents were "extremely isolated and none involved the same participants." Docket No. 67 at 30. The Defendant analogizes *Werth* and *Biggs* and argues that "[a] text message sent away

from school, a single comment made while P.R. was not present, and an athletic coach's single question – which was made innocently" do not amount to severe or pervasive harassment. Docket No. 67 at 31. In addition, the Defendant points to the fact that P.R. continued to socialize with some of her tormentors as evidence that any harassment was neither severe nor pervasive.

In response, the Plaintiff posits that this issue is better left to a jury. The Plaintiff claims that "the appearance of new symptoms . . . raises the inference that the stress associated with the harassment was severe enough that it manifested itself in physical symptoms" so a jury could conclude that the harassment was severe or pervasive. Docket No. 75 at 20. Here, the Plaintiff also alleges that Coach Dennis made additional harassing statements about P.R.'s HIV+ status (e.g., that "PR's HIV status could be used as an advantage against opposing soccer teams as they would be afraid of her," Docket No. 75 at 20). She also emphasizes that there were other incidents that the Defendant refuses to acknowledge, including "the frequent referral by other students to PR as 'PAIDS,' [and] the note left on PR's locker that stated 'NO AIDS AT WESTLANE.'" *Id.*

This is admittedly a close call. Much of the harassment that P.R. faced was spread over a period of years, which makes it seem somewhat less severe or pervasive. However, because this is the Defendant's motion for summary judgment, the Court must draw all reasonable inferences in P.R.'s favor. And, as P.R. notes, beginning in the winter of 2007 and continuing until the fall of 2008, P.R. did experience a change in her symptoms, which may be attributable to her treatment at Westlane. Accordingly, the Court cannot say, as a matter of law, that P.R.'s harassment was neither severe nor pervasive.

### D. Westlane knew about three incidents of harassment.

Although the Defendant does not directly address this factor, it emphasizes that it only heard about three incidents of harassment, and learned about each of those only *after* they had occurred. As to the other incidents that P.R. cites – the notes, emails, and instant messages; the "PAIDS" nickname; the phone call at Disney World; Coach Dennis' additional comments; and the yelling in the cafeteria – the Defendant disavows any knowledge of these incidents either before or after they occurred. In response, the Plaintiff emphasizes that Westlane knew that P.R. was HIV+ in May 2007. Docket No. 75 at 21. However, knowing that P.R. was HIV+, and even knowing that M.A. had harassed P.R. over AIM, does not establish that Westlane knew that P.R. would be harassed in the future. Nor does the record establish that Westlane knew about the notes on P.R.'s locker, the additional instant messages or emails, the fact that other students referred to P.R. as "PAIDS," the phone call that Ms. Rawl received at Disney World, the yelling in the cafeteria, or the additional comments made by Coach Dennis. Absent any evidence whatsoever as to the Defendant's knowledge of these incidents, the Defendant cannot be held liable for its alleged failure to adequately respond to them. However, the Court concludes that Westlane was made aware of three instances of harassment – the spring 2007 incident between P.R. and M.A., the fall 2007 incident involving C.C., and the fall 2008 incident with Coach Dennis. Accordingly, with respect to these three incidents only, the Court turns to the fifth and final element of the analysis.

### E. Westlane was not deliberately indifferent to three incidents of harassment of which it was aware.

Here, the Defendant claims that "P.R. is unable to show that the School's response was deliberately indifferent." Docket No. 67 at 33. To satisfy her burden, "P.R. must prove that the

School 'deliberately ignored' [her] complaints and 'knowingly refused' to take action." *Id*. (quoting *Biggs*, 229 F. Supp. 2d at 445). The Defendant emphasizes that "[t]here is not a shred of evidence that indicates the School was even remotely indifferent to the incidents. The School reacted immediately to the incident involving Z.A. and M.A." *Id*. In addition, "[a]fter Ms. Hall learned about the incident involving C.C., she notified both P.R.'s and C.C.'s mother. Ms. Hall discussed with C.C. the inappropriateness of the comment." *Id*. at 34. "Finally, after the third incident, Principal Lawrence met with Coach Dennis, explained what should have been done, and verbally reprimanded Dennis." *Id*. The Defendant claims that "[s]chool personnel reacted to each reported incident as quickly as possible" and "met with the culpable individuals, admonished them about their inappropriate behavior, and ensured that all interested parents were apprised of what had occurred." *Id*. Given this conduct, the Defendant asserts that its actions were "well within [its] permitted discretion and flexibility" and "certainly were not 'clearly unreasonable.'" *Id*.

In response, P.R. argues without any citation to the record, that after Westlane learned that she was HIV+ in 2007, "her subsequent complaints were not taken seriously . . . instead, they were 'shelved' as the ramblings of a drama queen." Docket No. 75 at 21. P.R. also claims that "[t]he School's indifference to [her] plight" is evidenced by a lack of training on the subject of disability discrimination and the fact that in its motion for summary judgment the Defendant argues that P.R. is not disabled. *Id*. Further, P.R. claims that Westlane's failure to fulfill promises made at the September 22 meeting with Dr. Cox proves that the Defendant was indifferent. She then alleges that "[t]he School's response was completely reactive and ineffective . . . it was void of any proactive nature." *Id*. Finally, P.R. concludes with an

15

assertion that "[t]he fact of The School's indifference is one for the jury to decide" because "[a] jury could reasonably conclude, based on the facts of this case, that The School was indifferent and that its response was ineffective and that it failed PR." *Id*. at 22.

Unfortunately, for P.R., deliberate indifference is a very rigorous standard and neither her arguments nor the record establish that the Defendant was deliberately indifferent to the three incidents of harassment of which it was aware. It is undisputed that Westlane took *some* action after every reported incident. After the incident with M.A. and Z.A., staff members met with the girls and their father, warned them, and admonished them about the serious nature of their actions. After the incident with C.C., counselor Hall spoke with C.C. twice and notified both Ms. Rawl and C.C.'s mother. Finally, after the incident with Coach Dennis, several meetings were held, Coach Dennis apologized, and Coach Dennis was verbally reprimanded. Although P.R. and Ms. Rawl may have believed that M.A. and Z.A. should have been suspended, or that Coach Dennis should have received a harsher punishment, school administrators enjoy a great deal of flexibility when making disciplinary decisions and responding to allegations of harassment. P.R. has simply not shown that the Defendant's responses to the three incidents of which it was aware were "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. Because the disciplinary actions taken by Westlane were not clearly unreasonable, summary judgment is appropriate on all of P.R.'s claims and the Defendant's motion must be **GRANTED**.

P.R. briefly argues that her claims should be analyzed under a hostile environment framework. She then cites *Hayut v. State University of New York*, 352 F.3d 733 (2d Cir. 2003), and asserts that under this analysis, there are issues of fact that require trial. *See* Docket No. 75

at 25. However, the Plaintiff has not identified any federal courts that have used a Title VII hostile environment analysis in a peer-on-peer disability harassment situation. Accordingly, although the Court acknowledges that the Plaintiff's proposed framework is another plausible means of analyzing P.R.'s claims, the Court remains convinced that the *Davis*-like method used herein and adopted by other federal courts is more appropriate. To the extent that this portion of P.R.'s brief is an attempt to advance a separate claim for disability harassment, this claim also fails. *See S.S.* 532 F.3d at 453.

Finally, the Court notes P.R.'s references to *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597-603 (1999) and *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 606-08 (7th Cir. 2004). Neither of these cases is relevant to the instant dispute. Thus, although the Court has read and considered these authorities, as well as P.R.'s arguments drawn therefrom, the Court remains convinced that its decision to grant the Defendant's motion for summary judgment is appropriate.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment (Docket No. 66) is **GRANTED**.

SO ORDERED: 11/01/2010

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

John H. Haskin
Haskin Lauter & LaRue
jhaskin@hlllaw.com

Andrew Anthony Manna
Church Church Hittle & Antrim
andrew@cchalaw.com

Steven Sams
Steven Sams, P.C.
stevensamslaw@att.net

Ryan Patrick Sink
Haskin Lauter & LaRue
rsink@hlllaw.com